## MOSES S. BOVEE AND WIFE v. TOWN OF DANVILLE.

*Injury on Highway. Contributory Negligence. Burden of Proof. Error in Charge to Jury. Damage. Injured " Feelings," not an Element of Damage.*

1. The insufficiency of the highway must be the sole, operative cause of the injury. If it is the joint product of the plaintiff's lack of prudence, and the town's negligence, there can be no recovery.
2. The burden of proof is upon the plaintiff to show that he contributed nothing towards producing the accident ; that the highway was insufficient; and that his conduct was prudent.
3. There was error in the charge to the jury, in giving two inconsistent instructions as to the burden of proof ;—the one correct, and the other not.
4. The plaintiff wife was prematurely delivered of twin living children ; and the miscarriage was the result of her injuries. Any physical or mental suffering attending the miscarriage, is a proper subject of compensation.
5. But the rule goes no farther. Any injured "feelings" *following* the miscarriage, not part of the pain naturally attending it, are too remote to be considered an element of damage.*

THIS was an action on the case for an injury to the plaintiff wife by reason of an alleged insufficiency in a highway which the

---

* See *Wyman* v. *Leavitt*, Alb. L. J., vol. 23, 253, March 26, 1881, a case decided by the Supreme Court of Maine, where it was held that mental anxiety, unattended by injury to the person, caused by blasting rocks, was not an element of damage ; Ib. 344; *Car Co.* v *Barker*, 4 Col. 344 ; s. c., 34 Am. Rep. 89 ; also *Coombe and Wife* v. *Moore*, in Cen. L. J. 536, June 10, 1881, an action before the Queen's Bench Division, for letting off rockets on the 4th of July, the plaintiffs claiming that by reason of the detonation the wife was attacked with hysteria. Shearm. & Redfield on Neg. (2d Ed.) s. 608, a.—REP.

defendant was bound to keep in repair. Plea, the general issue. Trial by jury, and verdict for the plaintiffs; June Term, 1880, Ross, J., presiding, Caledonia County.

The plaintiffs' evidence tended to show that, on the occasion in question, they were driving over a culvert on the defendant's highway, when their horse, for some unknown cause, suddenly shied toward the west and threw the wagon off the west end of the culvert, whereby the plaintiff wife was violently thrown upon the ground, and received such injuries, that, within a few weeks afterwards, she miscarried and was prematurely delivered of twin living children, with which she was pregnant at the time of the accident, and that said children both died very soon after their birth. The evidence tended also to show that the fall from the road-bed to the bed of the brook passing under the culvert was considerably less at the west end than at the east end. Against the defendant's objection and exception, the plaintiffs were allowed to show that there was no muniment at the east end of the culvert, and that there was, at that end, a fall of seven and one-half feet from the road-bed to the bed of the brook.

The defendant's evidence tended to show that said highway was a neighborhood road only, used during the winter, and at the time when the accident occurred, by but two families, and that the highway at the point complained of was of sufficient width for teams to meet and pass one another, and in every way sufficient for the travel, reasonably to be expected to pass over it, and that no accident ever occurred to the plaintiffs at that place, and that at the time of the alleged accident, the whole depression at the west end of the culvert was filled several feet deep with snow up to the level of the highway, and that no marks indicating any accident were discoverable upon the snow. The plaintiffs claimed there was little or no snow in the depression, and that she fell upon the frozen ground.

The court charged the jury that the plaintiffs, if they made out their right to recover, might recover among their other damages, for the injury to the plaintiff wife's feelings caused by the miscarriage, and the death of her children, if such miscarriage and death were attributable solely to the injury, to which the defendant

Bovee v. Danville.

excepted. The reporter's minutes were made a part of the exceptions.

In the course of the charge, the court informed the jury that, if a place like the one complained of existed in the main street of the village of St. Johnsbury, probably no one would claim that it did not constitute an insufficiency within the meaning of the law, to which statement the defendant excepted. This was said by way of illustrating that the duty of the town in regard to its highways was relative, and to be measured by the kind and amount of travel, reasonably expected to pass over it, and to the accidents that might reasonably be expected to happen thereon.

The defendant having claimed that the accident, if any, was caused, and contributed to, by the want of care on the part of the plaintiff husband in keeping his horse under proper control, the court charged the jury that the burden did not rest upon the plaintiff to establish the fact that no want of care or prudence on their part contributed to the accident, and that the burden in this respect was not upon either party; but that the jury must be satisfied from all the evidence that the plaintiffs were not guilty of any lack of care and prudence, contributing to the injury.

The above instruction was given when the jury came in from the jury-room, and made inquiry, and when the reporter was not present, and was not included in the exceptions from the reporter's minutes of the main charge. To which charge the defendant excepted;—in other respects the charge was such as the case called for.

### EXTRACT FROM JUDGE'S CHARGE.

The next question is, whether the plaintiff was in the exercise of prudence in the manner of driving. I have not heard it claimed that the horse or wagon were unsafe. I think all the testimony about that was Mr. Bovee's, who testifies that the horse and wagon were safe. He knew all about this place. You have heard the manner in which he describes he was driving. Was he driving in such a manner and conducting himself in such a manner as a reasonable and prudent man would conduct himself? He was bound, in using the highway, to conduct himself with prudence,—not the highest degree of prudence, but in such a manner, as we should say, prudent men would ordi-

narily conduct themselves under the same circumstances. If he did not conduct in that manner, taking into account his knowledge and every circumstance, and if his failure to conduct in that way in any respect, contributed to the happening of the injury, that would defeat the plaintiffs' right to recover; and the wife being under the husband's protection, any failure in his conduct would be attributed to her, and defeat her right to recover. I don't know whether it is claimed there was any contributory negligence.

*Mr. Ide.* "Our claim was that if he knew it was a dangerous place he was bound to keep his horse under control in proportion to the knowledge he had of the character of the place."

That is so. If he knew there was no railing, he had to exercise prudence as he knew the facts to exist, so as to go safely across,—keep his horse under control. He knew it was narrow, and he knew there was no muniment; he must drive with reference to that; that is, he was not to let his horse have his own way,—was not to drive at break-neck speed; drive as a prudent man would drive, and have his horse under control as a prudent man would, knowing what the character of the horse was. If a man knows his horse shies and is skittish, and especially if he is going along a narrow place, where there is no railing, he is bound to exercise a higher degree of care and watchfulness in regard to his team, than if he had a safe horse. A man has got to conduct himself with reference to circumstances, with reference to his team, with reference to what he knows of the road. Now, from all the circumstances, were these plaintiffs in the exercise of what we call common prudence, or such care and prudence, as prudent men generally exercise under like circumstances, put them right in their place? If they were not in the exercise of this degree of care and prudence, and the failure to exercise it, contributed to the happening of the injury in the least, that would defeat the plaintiffs' right to recover. But if they make out this highway was insufficient, and that the accident happened without any want of care and prudence on their part, such as I have explained, then the plaintiffs have made out their right to recover, if they have made out their right to recover, if they have connected the injury with the accident. Now, what injury did she receive? She claims she injured her back, and especially the back of her head and neck, shoulders, and small of her back; and she claims the injury she received brought on a miscarriage, and that she has been suffering from it ever since. Now, whatever loss she has sustained by the impairment of her bodily faculties, (that is not because she could not serve her husband as well, because that is recoverable in another suit, if at all, but because she cannot

enjoy the use of them, and because of the pain, suffering, and inability to use her bodily faculties and powers as she otherwise would), she is entitled to recover for that, and for everything that would be the natural result of this injury, and was a result of it. If this miscarriage was brought about by this injury, any suffering occasioned thereby, any injury to her feelings, or pain that was personal to her, should be compensated.

*Henry C. Bates,* for plaintiffs.

The question is, whether the mental distress and anguish caused a sufferer by reason of personal injuries, may be compensated. We say that in treating such injury as an element of damage, there was no error. No argument is necessary to prove that such injuries are often more lasting, and attended by more acute suffering, than mere physical injuries, sometimes even dethroning reason, and destroying bodily health, and no reason can be assigned for excluding them in the estimate of damages ; indeed the subject would seem to be fully settled by judicial decisions. *Wright* v. *Compton,* 53 Ind. 337 ; *Deppe* v. *Chicago, etc. R. R. Co.,* 38 Iowa, 592 ; *Kepler* v. *Heyer,* 48 Ind. 499 ; *Owen* v. *Brockschmidt,* 54 Mo. 285 ; *Pittsburgh R. R. Co.* v. *Donahue,* 70 Penn. St. 119 ; *Penn. Canal Co.* v. *Graham,* 63 Penn. St. 290 ; *Aaron* v. *2d Ave. R. R. Co.,* 2 Daly, (N. Y. C. P.) 127 ; *Canning* v. *Williamstown,* 1 Cush. (Mass.) 451 ; *Masters* v. *Warren,* 27 Conn. 293 ; *Segur* v. *Barkhamsted,* 22 Conn. 298 ; *Johnson* v. *Wells, Fargo & Co.,* 6 Nev. 224, and 3 Am. Rep. 245 ; *Ford* v. *Munroe,* 20 Wend. N. Y. 210.

The charge was correct as to plaintiff's care and prudence. The whole charge should be construed together. *Hill, Adm'r.* v. *New Haven,* 37 Vt. 501 ; *Lester* v. *Pittsford,* 7 Vt. 158 ; *Powers* v. *Woodstock,* 38 Vt. 50.

*Belden & Ide,* for defendant.

The charge cannot be sustained on the ground that injury to the feelings may be considered in allowing exemplary damages, because the case was not one calling for exemplary damages. *Snow* v. *Carpenter,* 49 Vt. 426 ; *Boardman* v. *Goldsmith,* 48 Vt. 403.

Nor does the ruling come at all within the principle of the cases holding that a plaintiff, in actions for bodily injury, may recover for mental sufferings. The question at issue in all those cases (like *Segur* v. *Barkhamsted*, 22 Conn. 290; *Masters* v. *Warren*, 27 Conn. 299; *Canning* v. *Williamstown*, 1 Cush. 451, and others) was whether or not the plaintiff was entitled to recover for the fear, terror, and mental anguish "naturally incident to the risk and damage *at the time of the injury.*"

Whenever an action has been given by statute for the death of a human being, the court has uniformly held that the mental sufferings of the survivors are not to be considered in estimating the damages. *Blake* v. *Midland R. Co.*, 18 Q. B. 93; *Telfer* v. *Northern R. Co.*, 1 Vroom, (N.J.) 188; 3 Am. Law Reg. N. S. 665; *Tilly* v. *Hudson R. R. Co.*, 24 N. Y. 475, and 29 N. Y. 252; *Penn. R. R. Co.* v. *Kelly*, 31 Penn. St. 372; *Pierce* v. *Millay*, 44 Ill. 189; *Penn. R. R. Co.* v. *Zebe*, 33 Penn. 318; *Ohio & Miss. R. R. Co.* v. *Tindall*, 13 Ind. 366; *McIntyre* v. *N. Y. Cent. R. R. Co.*, 47 Barb. 515; *Donaldson* v. *M. & M. R. R. Co.*, 18 Iowa, 280; *Chicago* v. *Major*, 18 Ill. 349; see *Hunter* v. *Stewart*, 47 Me. 419; Wood's Mayne on Damages, 71 and n.; *Milwaukee R. R. Co.* v. *Kellogg*, 4 Otto, 474.

In a leading case, *Hobbs.* v. *L. & S. W. R. Co.*, L. R. 10 Q. B. 111–117, (44 L. Q. B. 49,) when the plaintiff's wife had been put down at a wrong station in the night in the rain, and had caught cold while walking to a station, Chief Justice COCKBURN says, " It cannot be said that the catching cold of the plaintiff's wife is the *immediate and necessary effect of the act, or one which could possibly be said to have been in the contemplation of the parties.* See *Huxley* v. *Berg*, 1 Starkie, 98, where wife was terrified and died,— plaintiff was not allowed to recover; *Phillips* v. *Dickinson*, 85 Ill. 11, where plaintiff had a miscarriage caused by misconduct of defendant, and it was held too remote; *State* v. *Baltimore, &c. R. R. Co.*, 24 Md. 84, where mental suffering of a mother upon loss of child, held too vague; *Mindell* v. *Anthro*, 71 Ill. 241, where mental suffering from intoxication of plaintiff's husband was held not proper item of damages.

The burden of proof is on the plaintiff, and *he must prove in*

*the outset* that the injury happened without fault on his part. *Barber* v. *Essex*, 27 Vt. 69 ; *Powers* v. *Woodstock*, 38 Vt. 50 ; *Walker et ux.* v. *Westfield*, 39 Vt. 246 ; *Hyde, Admr.* v. *Jamaica*, 27 Vt. 465. The rule is the same in other States. *Button* v. *R. R. Co.*, 18 N. Y. 251 ; *Lane* v. *Crombie*, 12 Pick. 177 ; *Parker* v. *Adams*, 12 Met. 415 ; *Kennard* v. *Burton*, 25 Me. 49 ; *Moore* v. *R. R. Co.*, 4 Zabriskie, 284 ; *Murphey* v. *Dean*, 101 Mass. 466 ; *Baird* v. *Morford*, 29 Iowa, 531.

The opinion of the court was delivered by

Powers, J.   The recital of the facts and circumstances attending a personal injury in cases of this kind, necessarily involves the conduct of the plaintiff, or some one for whose conduct the plaintiff is answerable.   A recovery can be predicated only upon a state of facts, that enables the jury to say that the injury happened, in the language of the statute, " by means of " the insufficiency of the highway.   If it be said that the burden is to show that the insufficiency of the highway was the *sole*, operative cause of the injury, this is equivalent to saying that no want of due care on the part of the plaintiff helped to produce it ; or in other words, that the injury is not the joint product of the plaintiff's lack of prudence and the defendant's negligence.   If the rule seems to require the plaintiff to prove a negative, such burden often arises, and no violence is done to the rules of evidence.

Notwithstanding what has been *said* in some of the cases respecting the burden of proof upon the question of contributory negligence in this class of actions, we do not understand that any case in this State has *decided* that it rests anywhere except upon the plaintiff.   The judges who heard this case are all agreed that such burden *is* upon the plaintiff.   The story of the accident settles this question.   Witnesses describe the condition of the road, and from such description the jury find whether insufficiency is proved.   No witness is allowed to say that it is or is not sufficient.   In like manner witnesses describe the acts and conduct of the plaintiff at the time of the accident.   They are not allowed to say that the plaintiff's conduct was prudent or otherwise.   Nevertheless the jury must be able to say that the highway was insufficient, and the

plaintiff's conduct was prudent; and it is the duty of the plaintiff to produce such a state of evidence as will enable the jury to find both these questions in favor of the plaintiff. *Walker et ux.* v. *Westfield*, 39 Vt. 246.

It is argued that this error of the court in telling the jury that this burden of proof did not rest upon the plaintiff, was cured by the succeeding instruction that the whole case must show that no want of due care on the part of the plaintiff contributed to her injury. The latter instruction was correct; the former erroneous. Circumstances might possibly occur where such inconsistent instructions might not work confusion in the minds of the jury; but in this case the jury came into court from their jury-room, and inquired specially where this burden of proof upon this question rested; thus indicating that they had some idea of the force of this rule, and its importance as applied to the case then in hand. In answer to such inquiry these contradictory instructions were given and the jury, as in *Alexander* v. *Blodgett*, 44 Vt. 476, were left to adopt which one they pleased. This exception is therefore sustained.

Upon the question of damages the fact of Mrs. Bovee's miscarriage was made prominent at the trial. In the notice a threatened miscarriage is set forth, and in the declaration the actual fact is alleged as one of the injuries sustained. The proofs disclosed the fact that this plaintiff was prematurely delivered of twin living children. The plaintiff was entitled to recover all damages that were naturally and legitimately consequent upon the negligence of the town. If the violence done her person resulted in the miscarriage, the miscarriage was a legitimate result of such negligence. Any physical or mental suffering attending the miscarriage is a part of it, and a proper subject of compensation. But the rule goes no farther. Any injured feelings *following* the miscarriage, not part of the pain *naturally attending* it, are too remote to be considered an element of damage. If the plaintiff lamented the loss of her offspring, such grief involves too much an element of sentiment to be left to the conjecture and caprice of a jury. If like Rachael, she wept for her children and *would not* be

comforted, a question of *continuing* damage is presented, too delicate to be weighed by any scales which the law has yet invented.

The language of the charge is, " If this miscarriage was brought about by this injury, any suffering occasioned thereby, *any injury to her feelings,* . . . should be compensated." If the court used the words italicized as synonymous with the term " suffering," which had already been specified, the jury might not have been misled. But in view of the prominence given to the fact of the miscarriage, the jury might easily understand that the plaintiff's injured feelings, induced by reflecting upon her great calamity and grieving over her disappointed hopes, was a matter proper for their consideration. We think the charge was misleading in this respect.

The judgment is reversed and a new trial granted.